**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HARISH ANANTHAPADMANABHAN, | ) | |
| and SHRUTI HARISH, | ) | |
| Plaintiff, | ) | 1: 15-cv-05412 |
| | ) | |
| vs. | ) | Judge Harry D. Leinenweber |
| | ) | |
| BSI FINANCIAL SERVICES, INC. | ) | Magistrate Judge Mary M. Rowland |
| Defendant. | ) | |

## BSI FINANCIAL SERVICES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT

Defendant BSI FINANCIAL SERVICES, INC. ("BSI"), by and through its attorneys,

respectfully submits this brief in support of its motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss

Plaintiff HARISH ANANTHAPADMANABHAN and SHRUTI HARISH ("Plaintiffs") June 18, 2015

Complaint ("Complaint") for failure to state any cognizable claim for relief.

## INTRODUCTION

The instant litigation concerns a home loan Plaintiff originally took out from Mortgage

Electronic Registration Systems, Inc. ("MERS") on behalf of Provident Funding Group, Inc.

("Provident") on April 16, 2007, for $349,200.00 (the "Note," attached hereto as **Exhibit 1**), which

was secured by a mortgage (the "Mortgage," attached hereto as **Exhibit 2**) on certain real property

located at 2369 Greenbrook Drive, Aurora, Illinois 60502 ("Property"). Plaintiff granted the Note to

Provident and its subsequent transferees, and granted to Mortgage to Provident. MERS assigned the

Mortgage to Bank of America, N.A. ("Bank of America") per an assignment of mortgage dated March

28, 2012 (the "First Assignment," attached hereto as **Exhibit 3**) and recorded in the DuPage County

Recorder of Deeds as Document No. R2012-041667. Bank of America then assigned the Mortgage to

Ventures Trust 2013-I-H-R by MCM Capital Partners LLC, it's trustee (the "Second Assignment,"

attached hereto as **Exhibit 4**). On October 1, 2014, BSI sent the Plaintiffs a Notice of Servicing

Transfer, informing them that the servicing of the loan was being transferred to BSI (the "Notice of

Servicing Transfer," attached hereto as **Exhibit 5**).

Plaintiff defaulted on the Note and Mortgage, and on November 20, 2012, Bank of America

filed a foreclosure complaint (the "Foreclosure Complaint") against Plaintiff in the Circuit Court of

DuPage County, Illinois (the "State Court") styled *Bank of America, N.A. v. Harish*

*Ananthapadmanabhan, et al*., No. 2012CH005525 (the "State Foreclosure Action"). The State

Foreclosure Action remains pending.

On January 31, 2013, Plaintiffs filed a Chapter 13 bankruptcy petition in the United States

Bankruptcy Court, Northern District of Illinois, Case Number 13-03950 ("Bankruptcy"). In Schedule

D of the petition Plaintiffs listed a secured pre-petition debt to Bank of America in the amount of

$312,274.00, secured by the property (the "Bankruptcy Schedule," attached hereto as **Exhibit 6**). On

May 28, 2013, Bank of America timely filed a claim in the amount of $338,549.17 in the Bankruptcy

(the "Claim," attached hereto as **Exhibit 7**). On June 6, 2013, Plaintiffs' filed a modified Chapter 13

plan (the "Modified Plan," attached hereto as **Exhibit 8**). The Modified Plan proposed to treat Bank of

America's claim as follows:

"Debtors are surrendering the real property located at 2369 Greenbrook Drive, Aurora,

Illinois to Bank of America, N.A. and PNC Bank, N.A., in full satisfaction of their

claims." *Id.* at p. 5.

Bank of America did not file an objection to Plaintiff's Modified Plan and the Modified Plan was

confirmed by the Honorable Donald R. Cassling on June 7, 2013 (the "Confirmation Order," attached

hereto as **Exhibit 9**). On June 17, 2014, Bank of America, through its counsel, Freedman Anselmo

Lindberg L.L.C., presented a Motion for Relief from Automatic Stay in the Bankruptcy. The Order

Granting Relief from the Automatic Stay was entered by the Honorable Donald R. Cassling on June

27, 2014, modifying the automatic stay in the Bankruptcy as to the interest of Bank of America, its successors and assigns in the Property (the "Relief from Stay Order," attached hereto as **Exhibit 10**).[1]

Despite the Relief from Stay Order, Plaintiff filed the instant Complaint suing Defendant for violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. § 1692, violations of the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. § 227, violations of the Bankruptcy Automatic Stay pursuant to 11 U.S.C. § (k)(l), and violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") pursuant to 815 ILCS 505/1 et seq. Plaintiffs cannot state a cognizable legal claim under their claims for violation of the FDCPA, the TCPA, the Bankruptcy Automatic Stay, or violation of the ICFA. The Court should, therefore, dismiss the Complaint in its entirety, with prejudice.

## ARGUMENT

### I.     APPLICABLE LEGAL STANDARD.

To survive a Rule 12(b)(6) motion, a complaint must overcome "two easy-to-clear hurdles: (1) the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests; and (2) its allegations must plausibly suggest that the plaintiff has the right to relief, raising that possibility above a speculative level." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (internal quotation marks omitted). The purpose of a Rule 12(b)(6) motion is to provide a defendant with a mechanism for testing the legal sufficiency of the complaint while preserving judicial resources and avoiding unnecessary discovery. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010). On May 18, 2009, the Supreme Court rendered its opinion in *Ashcroft v. Iqbal* and

---

[1] The Court may consider the Note, Mortgage, First, Second Assignments, and filings from the Bankruptcy on this motion to dismiss, without converting the motion to one for summary judgment, because these documents "are referred to in the complaint and are central to the plaintiff's claims." *Michalowski v. Flagstar Bank, FSB*, No. 01 C 6095, 2002 WL 113905, at *2 (N.D. Ill. Jan. 25, 2002) (*citing Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998)). Furthermore, the Mortgage, First and Second Assignments, and Bankruptcy filings are matters of public record and this Court may similarly consider them without converting this motion to one for summary judgment. *See Anderson v. Simon*, 217 F.3d 472, 474-475 (7th Cir. 2000) (*citing Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

reiterated in a strongly-worded opinion that the pleading requirements of *Twombly* should be rigorously enforced by the lower courts when considering a Rule 12(b) motion to dismiss a complaint. 556 U.S. 662 (2009) (citing *Twombly*, 550 U.S. 544). The Court explained that while a complaint attacked by a Rule 12(b)(6) motion does not need "detailed factual allegations," Rule 8(a) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s] devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When considering a Rule 12(b) motion, the Court instructed lower courts to consider "[t]wo working principles." *Iqbal*, 556 U.S. at 678. First, a court is not bound to accept as true legal conclusions couched as factual allegations. To the contrary, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is *plausible on its face*." *Id.* (quoting *Twombly*, 550 U.S. at 570) (emphasis added) (internal quotations omitted). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). To guide lower courts on the "plausibility" principle, the Court explained:

> A claim has facial plausibility when the plaintiff pleads factual content
> that allows the court to draw the reasonable inference that the defendant is
> liable for the misconduct alleged. The plausibility standard is not akin to a
> probability requirement," but it asks for more than a sheer possibility that
> a defendant has acted unlawfully. Where a complaint pleads facts that are

"merely consistent" with a defendant's liability, it "stops short of the line

between possibility and plausibility of "entitlement to relief."

*Id.* at 679 (internal citations omitted). Thus, "[d]etermining whether a complaint states a plausible

claim for relief will . . . be context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Id.*

In short, under *Iqbal* and *Twombly*, a complaint must contain direct and plausible allegations

supporting all material elements necessary to sustain recovery under a viable legal theory in order to

survive a motion to dismiss under Rule 12(b)(6). A complaint should be dismissed, when, on its face,

the complaint is devoid of facts necessary for the plaintiff to prevail under the causes of action

asserted, or when the complaint itself discloses facts that necessarily defeat the causes of action pled.

Plaintiffs' allegations fall far short of the standards articulated in *Iqbal* and *Twombly*, even

when accepted as true. Plaintiffs' complaint fails to establish any plausible claim against BSI upon

which relief can be granted and therefore should be dismissed pursuant to Rule 12(b)(6).

## II.   EACH OF PLAINTIFF'S CLAIMS FAILS AS A MATTER OF LAW AND THE COURT SHOULD DISMISS THEM ACCORDINGLY.

### a.   COUNT I – Plaintiff Cannot State a Cognizable Claim Under the FDCPA Because this Statute Does Not Apply to BSI in this Case.

The purpose of the FDCPA is "to eliminate abusive debt collection practices by *debt collectors*

[and] to insure that those *debt collectors* who refrain from using abusive debt collection practices are

not competitively disadvantaged." 15 U.S.C. § 1692(e) (emphasis added). The FDCPA defines "debt

collector" as "any person who uses any instrumentality of interstate commerce or the mails in any

business the principal purpose of which is the collection of any debts, or who regularly collects or

attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15

U.S.C.  § 1692(a)(6). The FDCPA also defines the term "creditor" to mean "any person who offers or

extends credit creating a debt or to whom a debt is owed, but . . . does not include any person to the extent that he receives an assignment or transfer of a debt *in default* solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692(a)(4). As a crucial distinction in the application of the statute, "these two categories . . . are mutually exclusive." *Ruth v. Triumph Partnerships*, 577 F.3d 790, 796 (7th Cir. 2009) (citing *Schlosser v. Fairbanks Capital Corp*., 323 F.3d 534 (7th Cir. 2003). The statute further clarifies that the definition of "debt collector" does not apply to an entity, such as a mortgage servicer, that collects debts that were "not in default at the time it was obtained." 15 U.S.C. § 1692(a)(6)(F)(iii). See also, S. Rep. No. 95-382 (1977), reprinted in U.S. Code Cong. & Ad. News 1695, 1698. Therefore, when, as here, the debt did not originate with the defendant but was acquired from another party, the defendant's "status under the FDCPA turns on whether the debt was in default at the time it was acquired." *Ruth*, 577 F.3d at 796-97 (citing *McKinney v. Cadleway Properties*, 548 F.3d 548 F.3d 496 (7th Cir. 2008); *Schlosser*, 323 F.3d at 538-39). See also, *Bailey v. Security Nat. Servicing Corp.*, 154 F.3d 384, 387 (7th Cir. 1998) ("'Where the statue's language is plain, the court's function is to enforce it according to its terms. . . . The plain language of § 1692a(6)(F) tells us that an individual is not a 'debt collector' . . . if the debt he seeks to collect was not in default at the time he purchased (or otherwise obtained) it.") (citations omitted)).

The FDCPA does not, however, define "in default." Black's Law Dictionary defines default as "[t]he omission or failure to perform a legal duty; esp., the failure to pay a debt when due. . . . [T]o fail to perform a contractual obligation." *Black's Law Dictionary* 480 (9th ed. 2009). "[C]ourts applying §1692a(6)(F)(iii) look to any underlying contracts and applicable law governing the debt at issue." *Dios v. Int'l Realty & Investments*, 641 F.3d 1071, 1074 (9th Cir. 2011) (citing Fed. Trade Comm'n, Advisory Op. n. 2 (April 25, 1989). The Seventh Circuit in *Bailey* dealt with a factual scenario where after the plaintiffs had defaulted on their mortgage they signed a forbearance agreement with the U.S. Department of Housing and Urban Development ("HUD"), wherein they agreed to make a series of

6

payments to bring their mortgage current. 154 F.3d at 386. When the plaintiffs sued a servicer of the mortgage under the FDCPA, who had acquired the loan subsequent to the forbearance agreement, the Court agreed with the servicer, "[c]ommon sense and the plain meaning of the statute[, in] distinguish[ing] between an individual who comes along collecting on a defaulted debt and one who seeks collection on a debt owed under a brand new payment plan . . . that is current." *Id*. at 387. Beyond the statutory motives, the Court questioned why the plaintiffs would seek to remove this distinction, "[s]urely they benefited from the renegotiated plan, and so their argument that their default never went away and continues to haunt them is curious if not counter-intuitive." *Id*.

Courts have routinely applied the plain meaning of the statute and rejected the plaintiffs' attempts to "cobble together a tortured meaning of 'debt collector'" to the contrary. *Mysyk v. Fairbanks Capital Corp*., No. 02 C 247, Order (N.D. Ill. June 25, 2002) (Zagel, J.) See also, *Montgomery v. Huntington Bank*, 346 F.3d 693 (6th Cir. 2003) (finding that a bank which obtained the debt before it was in default did not fall under the definition of debt collector); *Williams v. Edelman*, 408 F. Supp. 2d 1261, 1265 (S.D. Fla. 2005) ("Courts have dismissed FDCPA claims on motions to dismiss where the allegations make clear that the debt in question was not in default at the time of the defendant's collection efforts."). Indeed, this Court has dismissed an FDCPA claim because the plaintiff failed to affirmatively allege that the debt was in default at the time it was acquired by defendant. *Porter v. Fairbanks Capital Corp*. 2002 WL 31163702, **2-3 (N.D. Ill. Sept 27, 2002).

Here, Plaintiffs' Complaint declares Defendant to be "a creditor, lender, debt collector . . . and servicer of mortgage loans." Pl. Compl. Par. 6. Under the FDCPA, of course, the categories of "creditor" and "debt collector" are mutually exclusive and further clarification within the confines of the statute must be alleged by Plaintiff to survive a motion to dismiss. See *Ruth*, 577 F.3d at 796. Specifically, Plaintiff must satisfy 15 U.S.C. § 1692(a)(6)(F)(iii) and plausibly allege that the loan was

in default when Defendant acquired it. To this end, Plaintiff labels the pertinent transaction with two naked assertions:

1. "On September 30, 2014, *while the subject loan was in default*, [Bank of America] *sold* the subject loan to BSI." Pl. Compl. Par. 20 (emphasis added).

2. "BSI qualify as a 'debt collector' because BSI acquired rights to the subject loan *after it was in default*." Pl. Compl. Par. 42 (emphasis added).

At the onset, the insufficient legal and factual basis for the first count of Plaintiffs' Complaint is betrayed by the inconsistency with which the "in default" element, and its essential temporal qualification, is addressed. First, Plaintiff alleges the subject loan was "in default" at the time "the subject loan was *sold* to BSI." Pl. Compl. Par. 20 (emphasis added). Of course, if the loan was sold to BSI then as the creditor the FDCPA would be completely inapplicable. See 15 U.S.C. § 1692(a)(6) (definition of "debt collector" subject to the FDCPA is limited to who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."). Furthermore, Plaintiff alleges that the loan was sold to BSI "*while* the subject loan was in default." Pl. Compl. Par. 20 (emphasis added). In Plaintiff's latter conclusory assertion it is alleged that "BSI acquired the rights to the subject loan *after* it was in default." Pl. Compl. Par. 42 (emphasis added). Regarding an element where time is an essential aspect, the confusion of "while" and "after" is fatal to the pleading party. In *Iqbal* and *Twombly* before it, the Supreme Court advised the lower courts that "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 566 U.S. at 679 (quoting *Twombly*, 550 U.S. 544) (internal quotations omitted). Here, Plaintiff fails to even allege facts that are merely consistent as to whether Defendant's conduct at issue here is regulated by the FDCPA.

In addition, even taking a supplemented amalgamation of Plaintiff's two asserted conclusions to read that 'BSI acquired the servicing rights to Plaintiff's loan while the subject loan was in default,"

this threadbare recitation of this element of a FDCPA cause of action is nonetheless insufficiently plead. See *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544). The failure of Plaintiffs' Complaint to allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," is highlighted by a mere glance at the record. *Iqbal*, 556 U.S. at 678. Here, the Note executed by the Plaintiffs and secured by the Mortgage also executed by the Plaintiffs, states that if the borrowers "do not pay the full amount of each monthly payment on the date it is due," they will be in default. (**Exhibit 1**; **Exhibit 2**). The Modified Plan surrendering the Property to Bank of America in full satisfaction of Bank of America's claim under the Note and Mortgage was confirmed by the Bankruptcy Court on June 7, 2013 (**Exhibit 8**). On December 5, 2014, the loan was assigned by Bank of America to Ventures Trust (**Exhibit 4**). On October 1, 2014, BSI sent the Notice of Servicing Transfer to the Plaintiffs, informing them that BSI had commenced servicing the loan effective immediately (**Exhibit 5**). Therefore, when BSI acquired the servicing rights for the subject loan Plaintiff's obligation to make payments on the loan and BSI's rights to collect payments were extinguished by the confirmed Plan surrendering the Property in full satisfaction of the claim and the loan was, by law, no longer "in default." Indeed, the allegations in Plaintiffs' Complaint confirm that the legal status of the loan when BSI acquired the servicing rights was not "in default:"

1. "BSI violated § 1692f by attempting to coerce and induce Plaintiffs' into paying a debt that *was not legally owed*." Pl. Compl. Par. 54 (emphasis added).

2. "BSI knew or should have know that the subject debt was *uncollectable as a matter of law*." Pl. Compl. Par. 56 (emphasis added).

3. "BSI's collection efforts were highly confusing and upsetting to Plaintiffs as they were led to believe that their bankruptcy had no legal effect and that *they were still obligated on the subject debt*; which was the driving force in their decision to seek bankruptcy protection."

To be sure, a debt which is "not legally owed," "uncollectable as a matter of law," and to which the former obligee was no longer obligated to pay, is not one that would qualify as "in default" under the general definition of the term or the contractual definition at issue here. See *Black's Law Dictionary* 480 (9th ed. 2009); *Dios*, 641 F.3d at 1074.

Moreover, when the surrender of the Property, and Bank of America's acquiescence thereto as exhibited in not objecting to the Modified Plan, is juxtaposed against the clear-cut rights of a secured creditor in a Chapter 13 bankruptcy, the reasoning passed down by the Seventh Circuit in *Bailey* becomes especially pertinent. See Pl. Compl. Par. 16 (Bank of America "did not file any objection to Plaintiff's Chapter 13 Original or Modified Plan.); 11 U.S.C. § 1325(a)(5). Section 1325(a)(5) establishes two essential rights for secured creditors in Chapter 13 plans: the right to payment of the sum specified in its note and security agreement, and the right to repossess and liquidate the collateral securing the note in the event of nonpayment of the debtor. In *Hoskins, Matter of*, 102 F.3d 311, 313 (7th Cir. 1996) (citing 11 U.S.C. § 1325(a)(5)(b)), the Seventh Circuit characterized the circumstances under which a debtor can legally retain possession of the property as requiring the creditors to "in effect refinance their loans." The latter alternative, wherein the debtor surrenders the property under 11 U.S.C. § 1325(a)(5)(c), cannot be characterized as any less monumental of a change to the legal and contractual relationship between the debtor and creditor than a refinance of the loan. This reality, in turn, cannot be more apparent than when the surrender is effected in full satisfaction of the secured creditor's claim. The Seventh Circuit's holding in *Bailey*, wherein a forbearance agreement, a refinance, was held to remove the "in default" status of the loan under the FDCPA, is therefore directly applicable to the circumstances at hand. 154 F.3d at 386-87. Here, the surrender of the property by the confirmed Plan in full satisfaction of the claims under the mortgage and note clearly removed the "in default" status of the loan under the FDCPA. To be sure, for the Plaintiffs to contest this issue would perplex the Circuit Court, as surely the Plaintiffs benefitted from the surrender of the property, and so

any argument "that their default never went away and continues to haunt them is curious if not counter-intuitive." *Id*. At 387.

The Plaintiffs' Complaint fails to make even a consistent set of allegations as to the "in default" status of the loan at the time of the transfer of servicing rights. When the allegations made are reconciled in the best light possible, they are nonetheless "naked assertion[s] devoid of 'further factual enhancement'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. 544). Plaintiffs' Complaint cannot be read to allege more than a sheer possibility that the Defendant acted unlawfully and has not plausibly established that Plaintiff is entitled to relief under the FDCPA. With due consideration to the facts on record, it is apparent that Plaintiff will never be able to meet this threshold and the first count of Plaintiffs' Complaint should be dismissed with prejudice under Rule 12(b)(6).

**b. COUNT II – Plaintiff Cannot State a Cognizable Claim Under the TCPA Because the Complaint Fails to Allege More than Speculation and a Mere Possibility of Misconduct.**

The TCPA prohibits the making of "any call" using an "automatic telephone dialing system," ("ATDS") which in turn is defined as equipment having the capacity "to store or produce telephone numbers to be called, using a random sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1). The *capacity* element is critical here, "rather than whether the system actually stores, produces, or calls randomly or sequentially generated telephone numbers." *Modica v. Green Tree Servicing, LLC*, No. 14-C-3308, Mem. Op. & J. at 5 (N.D. Ill., Apr. 29, 2015) (citing *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009). This Court has previously denied a 12(b)(6) motion to dismiss a TCPA complaint that was challenged by the defendants for the plaintiff's alleged failure to plead the grounds for her suspicion that the ATDS system was used. *Vance v. Bureau of Collection Recovery, LLC*, 2011 WL 881550, at *6 (N.D. Ill., Mar. 11, 2011). The court held that the plaintiff was not required to state the grounds for her suspicions, and that even if the plaintiff were

required to do so, the plaintiff "does just that – she alleges that she suspected that the phone calls that she received were automated because she heard a prerecorded voice when she answered." *Id*.

Here, the Plaintiffs' Complaint allegations do not rise even to the level of a suspicion. Instead, the pleading merely "offers labels and conclusions [and] a formulaic recitation of the elements of a cause of action." *Iqbal* 566 U.S. at 678 (citing *Twombly*, 550 U.S. 544) (internal quotations omitted). Plaintiffs' Complaint simply states "BSI violated the TCPA by placing ten calls to [Plaintiff]'s cell phone using an ATDS without his consent." Pl. Compl. Par. 58. Merely placing ten calls to Plaintiff's cell phone does not, without more, allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 679 (internal citations omitted). The Federal Rules of Civil Procedure, as interpreted by the Supreme Court's plausibility principle, demand more than allegations that are "merely consistent" with a defendant's liability or which present the "sheer possibility that defendant has acted unlawfully," which is all that Plaintiffs' Complaint offers here. *Id*. Therefore, the second count of Plaintiffs' Complaint must be dismissed under Rule 12(b)6 as it does not state a cognizable claim for relief under the TCPA.

### c. COUNT III – Plaintiff Cannot State a Cognizable Claim Under the Bankruptcy Automatic Stay Because the Stay Does Not Apply to BSI in this Case.

Upon the filing of a bankruptcy petition, 11 U.S.C. § 362(a)(6) operates as a stay against "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." Section 362 further provides that at a party's request the court shall grant relief from the stay provided under section (a), "by terminating, annulling, modifying, or conditioning such stay." 11 U.S.C. § 362(d).

Plaintiffs' Complaint alleges that BSI's actions violated an automatic stay in Plaintiff's Bankruptcy. However, on June 27, 2015, the Honorable Judge Donald R. Cassling entered an Order in the Bankruptcy titled "Order Granting Relief from the Automatic Stay," in which it was ordered "that

the automatic stay in this case is modified as to the interest of Bank of America, N.A., its successors, and/or assigns in the property commonly known as 2369 Greenbrook Drive, Aurora, Illinois 60502." (**Exhibit 9**). Plaintiffs' Complaint is lacking any reference to the Relief from Stay Order despite attaching Bank of America's Motion for Relief from the Automatic Stay as an exhibit thereto. To allege that the automatic stay is violated while questionably omitting any reference to the stay being modified by court order, is to leave the defendant without "fair notice of what the claim is and the grounds on which it rests." *Tamayo*, 526 F.3d at 1084. Furthermore, because Defendant was relieved from the automatic stay as to Defendant's interest in the Property, Plaintiff cannot state a plausible, cognizable claim for relief under the Bankruptcy's automatic stay. Because Plaintiffs cannot state a plausible, legally cognizable claim for relief count three of Plaintiffs' Complaint should be dismissed under Rule 12(b)(6) with prejudice.

   **d. COUNT IV – Plaintiff Does Not State a Cognizable Claim Under the ICFA that Gives Defendant Fair Notice of Plaintiffs' Claims.**

   The ICFA prohibits "unfair methods of competition and unfair or deceptive acts or practices." 815 ILL. COMP. STAT. 505/2 (1992). Section two of the Consumer Fraud Act directs courts to consider the interpretations of section 5(a) of the Federal Trade Commission Act ("FTCA") in construing this Illinois law. *Id*. See *People ex re. Fahner v. Walsh* 461 N.E. 2d 78, 81 (Ill. App. Ct. 2nd Dist. 1984). The United States Supreme Court, in interpreting the FTCA, has set out the following factors to guide courts in evaluating whether a practice is unfair:

   (1) whether . . . it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers.

*Federal Trade Commission v. Sperry and Hutchinson Co*., 405 U.S. 233, 244-45 n.5 (1972) (quoting 29 Fed.Reg. 8355 (1964)). Here, Plaintiffs' Complaint asserts exaggerated portrays of a total of eighteen communications, some of which were mandated by federal law, as "constant," "continuous," "repeatedly," "harassing," and "perpetual." Pl. Compl. Par.77-78, 80. Plaintiffs' Complaint ups the hyperbolic ante by baselessly alleging that Defendant "bullied Plaintiff into submission." Pl. Compl. Par. 80. Despite applying these exaggerated labels, Plaintiffs' Complaint fails to allege any common-law, statutory, or other established concept of unfairness. The staggering height of the overstatements in Plaintiffs' Complaint leave Defendant without "fair notice of what the claim is and the grounds on which it rests." *Tamayo*, 526 F.3d at 1084. Because count four of Plaintiffs' Complaint leaves the Defendant and the court unable to ascertain the nature of Plaintiffs' claims, it should be dismissed under Rule 12(b)(6).

## **CONCLUSION**

For the foregoing reasons, BSI request that the Court dismiss the Complaint in its entirety, with prejudice, because: (1) Plaintiff cannot state a cognizable claim under the FDCPA; (2) Plaintiffs cannot state a cognizable claim under the TCPA; (3) Plaintiff cannot state a cognizable claim under the Bankruptcy Automatic Stay; and (4) Plaintiff does not state a cognizable claim under the ICFA.

Dated: August 24, 2015

Respectfully submitted,

BSI FINANCIAL SERVICES, INC.

By:     */s/ Roderic Fleming*
Attorney for Defendant

MARINOSCI LAW GROUP, P.C.
134 N. LaSalle St., Ste. 1900
Chicago, IL 60602
312-940-8583; (f) 312-988-0454
rfleming@mlg-defaultlaw.com

14