IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HARISH ANANTHAPADMANABHAN and SHRUTI HARISH,<br><br>    Plaintiffs,<br><br>    v.<br><br>BSI FINANCIAL SERVICES, INC.,<br><br>    Defendant. | Case No. 15 C 5412<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Amended Motion to Dismiss [ECF No. 23]. For the reasons stated herein, the Motion is granted in part and denied in part.

### I.  BACKGROUND

The following facts are contained in Plaintiffs' Complaint and the attached exhibits, and are presumed true for purposes of deciding the Motion to Dismiss. On April 16, 2007, Harish Ananthapadmanabhan ("Harish") and Shruti Harish ("Shruti") (collectively, the "Plaintiffs") executed a mortgage loan (the "subject debt") secured by real property located as 2369 Greenbrook Drive, Aurora, Illinois ("the Property") from Bank of America, N.A ("BoA"). Plaintiffs defaulted on the mortgage, and on November 20, 2012, BoA filed a Foreclosure Complaint. On January 31, 2013, Plaintiffs filed a Chapter 13 Bankruptcy

Petition in the United States Bankruptcy Court in the Northern District of Illinois, and an automatic stay was entered. Plaintiffs filed a modified Chapter 13 plan on June 6, 2013, proposing to surrender the Property to BoA and PNC Bank in full satisfaction of their claims. BoA did not object to the modified plan, and on June 7, 2013, it was confirmed by the bankruptcy court. Thereafter, the Bankruptcy Court modified the automatic stay "as to the interest of [BoA], its successors, and/or assigns in [the Property]."

On September 30, 2014, BoA sold the subject debt to Defendant, BSI Financial Services, Inc. ("BSI"). The following day, BSI sent Plaintiffs a Notice of Servicing Transfer, which directed Plaintiffs to "[s]end all payments due on or after October 1, 2014 to BSI." The Notice also contained the following disclaimer ("the Disclaimer"):

> If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally.

In the following six months, BSI placed at least ten phone calls to Plaintiff Harish's cell phone and at least five to Plaintiffs' home phone. BSI left at least ten voicemails regarding the subject debt. On one occasion, Plaintiff Harish answered the phone and asked BSI to stop contacting them because

they had filed bankruptcy, were represented by an attorney, and were not interested in keeping the Property or mitigating their losses. In response, the BSI representative apologized for calling and stated, "I shouldn't be talking to you." But the calls continued.

BSI also sent Plaintiffs at least three letters regarding amounts owed on the subject debt. The letters explained that there were "overdue payments," then stated a "current amount due," and warned that "[f]ailure to bring [the] loan current may result in fees and foreclosure — the loss of your home." The letters contained the Disclaimer that was present on the Notice of Servicing Transfer.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *Hallinan v. Fraternal Order of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). When considering a Rule 12(b)(6) motion to dismiss, a court must accept the plaintiff's allegations as true, and view them in the light most favorable to the plaintiff. *Meriwether v. Faulkner,* 821 F.2d 408, 410 (7th Cir. 1987). A court need not accept as true "legal conclusions, or threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements." *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)) (internal quotations and alterations omitted).

### III. ANALYSIS

#### A. Count I: Violation of the Fair Debt Collection Practices Act ("FDCPA")

BSI argues that Plaintiffs' claims under the FDCPA fail because BSI was not a "debt collector" as defined by the Act. Specifically, BSI contends that the subject debt was not in default at the time it was acquired by BSI, and therefore BSI qualifies as a "creditor" under the statute.

In general, the FDCPA defines a "debt collector" as one who attempts to collect debts "owed or due or asserted to be owed or due another," 15 U.S.C. § 1692a(6), whereas a "creditor" is defined as one who "offers or extends credit creating a debt or to whom a debt is owed," *Id.* § 1692a(4). For purposes of applying the Act, "these two categories — debt collectors and creditors — are mutually exclusive." *Schlosser v. Fairbanks Capital Corp.,* 323 F.3d 534, 536 (7th Cir. 2003).

But when a debt has been acquired from another party, the distinction becomes less clear. If the one who acquired the debt continues to service it, it is acting like a creditor. On the other hand, if it simply acquires the debt for collection,

it is acting more like a debt collector. "To distinguish between these two possibilities, the Act uses the status of the debt at the time of the assignment." *Id.* Where, as here, the debt was acquired from another party, "the [acquiring] party's status under the FDCPA turns on whether the debt was in default at the time it was acquired." *Ruth v. Triumph Partnerships,* 577 F.3d 790, 796 (7th Cir. 2009); *see also, Bailey v. Sec. Nat. Servicing Corp.,* 154 F.3d 384, 387 (7th Cir. 1998) (The plain language of § 1692a(6)(F)(iii) "tells us that an individual is not a 'debt collector' subject to the Act if the debt he seeks to collect was not in default at the time he purchased (or otherwise obtained) it."). At bottom, "one who acquires a 'debt in default' is categorically *not* a creditor; one who acquires a 'debt not in default' is categorically *not* a debt collector." *McKinney v. Cadleway Properties, Inc.,* 548 F.3d 496, 501 (7th Cir. 2008).

BSI acquired the subject debt from BoA. As such, BSI's status under the FDCPA — as either a creditor or a debt collector — turns on whether the subject debt was "in default" at the time it was acquired by BSI. *See,* 15 U.S.C. § 1692a(6)(F)(iii). Although the Act does not define "in default," courts interpreting Section 1692a(6)(F)(iii) look to any underlying contracts and applicable law governing the debt at issue. *See, e.g.,* Fed. Trade Comm'n, Advisory Op. n.2

(April 25, 1989) ("Whether a debt is in default is generally controlled by the terms of the contract creating the indebtedness and applicable state law."); *De Dios v. Int'l Realty & Investments,* 641 F.3d 1071, 1074 (9th Cir. 2011); *McKinney v. Cadleway Properties, Inc.,* 548 F.3d 496, 502 n.2 (7th Cir. 2008). BSI acknowledges that Plaintiffs defaulted on the subject debt, which resulted in BoA filing a foreclosure complaint on November 20, 2012, and Plaintiffs filing a Chapter 13 bankruptcy petition on January 31, 2013. But BSI argues that Plaintiffs' modified Chapter 13 plan, which was confirmed by the Bankruptcy Court on June 7, 2013, removed the subject debt from default because, under the plan, Plaintiffs agreed to surrender the Property "in full satisfaction" of BoA and PNC Bank's claims.

Plaintiffs respond that the bankruptcy proceedings protected them from various collection efforts over a specified period, by way of the automatic stay, but had no effect on the status of the subject debt. Plaintiffs argue that there were "no forbearance agreements or other superseding agreements [to] render [them] current and not in default." But this argument ignores the modified Chapter 13 plan, which had "the effect of creating a new contract" between Plaintiffs and BSI. *In re Van Bodegom Smith,* 383 B.R. 441, 450 (Bankr. E.D. Wis. 2008). This new contract could reasonably be construed as an accord and

satisfaction, which is "a contractual method of discharging a debt." *Pennsylvania Dep't of Pub. Welfare v. Davenport,* 495 U.S. 552, 560 n.3 (1990). As such, the modified plan had the effect of discharging the subject debt. A debt that has been discharged certainly cannot be considered to be in default.

Plaintiffs' modified Chapter 13 plan was effective and binding on the date it was confirmed, here, June 7, 2013. *In re Jones,* 219 B.R. 506, 509 (Bankr. N.D. Ill. 1998). BoA sold the subject debt to BSI on September 30, 2014. Therefore, the subject debt was not in default at the time it was acquired by BSI, and BSI cannot be considered a debt collector under the plain language of the FDCPA.

Nonetheless, Plaintiffs rely on *Schlosser v. Fairbanks Capital Corp.,* to argue that BSI should be considered a debt collector because it treated the subject debt as if it was in default at the time it was acquired. *Schlosser v. Fairbanks Capital Corp.,* 323 F.3d 534 (7th Cir. 2003). In *Schlosser,* the Seventh Circuit addressed whether a party who acquired a debt it understood to be in default could be treated as a debt collector, even though the debt was not actually in default at the time it was acquired. *Id.* at 537. The *Schlosser* court held that where "the parties to the assignment are mistaken about the true status [of the debt], that status will not determine the nature of the activities directed at the consumer." *Id.* at 538.

The court reasoned that "it makes little sense, in terms of the conduct sought to be regulated, to exempt an assignee from the application of the FDCPA based on a status it is unaware of and that is contrary to its assertions to the debtor." *Id.* Such a result would give the assignee little incentive to acquire accurate information about the status of the loan when its ignorance could protect it from FDCPA liability. *Id.* Therefore, the court concluded that the exception to the statutory definition of debt collector under section 1692a(6)(F)(iii) for a party acquiring a debt not in default at the time is was obtained does not apply to a party who asserts that a default existed when the party acquired the debt and "attempt[s] to collect on [the] debt that it assert[s] to be in default." *Schlosser,* 323 F.3d at 539.

From the allegations in the Complaint, it is clear that from the time BSI acquired the subject debt from BoA, and at all relevant times thereafter, it asserted that the subject debt was in default. Moreover, Plaintiffs have sufficiently alleged that BSI attempted to collect payment on the subject debt it asserted to be in default. Under *Schlosser,* BSI's mistaken belief about the status of the debt does not exempt it from liability under the FDCPA. Therefore, the Court finds it is plausible that BSI acted as a debt collector under the FDCPA, despite the fact that the subject debt was not actually in default at the time BSI

acquired it. For this reason, the Court denies BSI's Motion to Dismiss Count I of the Complaint.

### B. Count II: Violation of the Telephone Consumer Protection Act ("TCPA")

The TCPA restricts the use of "automated telephone equipment." 47 U.S.C. § 227. The TCPA states, in relevant part:

> It shall be unlawful for any person . . . (A) to make any call (other than a call made for emergency purposes or made with the express consent of the called party) using any automatic telephone dialing system or an artificial prerecorded voice . . . (iii) to any telephone number assigned to a . . . cellular telephone service. . . .

*Id.* at § 227(b)(1)(A)(iii). To state a cause of action under the TCPA, a plaintiff must allege that: (1) a call was made; (2) the caller used an automatic telephone dialing system or artificial or prerecorded voice; (3) the telephone called was assigned to a cellular telephone service; and (4) the caller did not have the prior express consent of the recipient. *Hanley v. Green Tree Servicing, LLC*, 934 F.Supp.2d 977, 982 (N.D. Ill. 2013). The Act defines "automatic telephone dialing system" ("ADTS") as "equipment which has the capacity — (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

Plaintiffs' Complaint alleges that BSI (1) placed at least ten phone calls between October 15, 2014 and December 12, 2014, (2) using an ADTS, (3) to Plaintiff Harish's cell phone, (4) without his consent. BSI contends that Plaintiffs' TCPA claim fails because they have not alleged sufficient facts to support the conclusory statement that BSI used an ADTS. Specifically, BSI argues that "[m]erely placing ten calls to Plaintiff's cell phone does not, without more, allow the court to" draw the reasonable inference that BSI used an ADTS. Instead, BSI argues that Plaintiffs must supplement the assertion that an ADTS was used with some additional factual allegations.

The Court agrees that Plaintiffs' Complaint is insufficient. Use of an ATDS and the pre-recorded nature of the messages are not legal conclusions, they are facts. Still, when a fact is itself an element of the claim, as is the case here, it is not sufficient to recite that fact verbatim without other supporting details. A plaintiff must supply enough additional, independent facts "to raise a reasonable expectation that discovery will reveal evidence" of the alleged misconduct. *Twombly,* 550 U.S. at 556. Plaintiffs provide no information about the calls they received from BSI beyond vague statements about their content. (*See, e.g.,* Compl. ¶ 23.) There is no indication that the messages that were left on Plaintiffs' voicemail were prerecorded, or that when Plaintiffs answered the

calls there was a delay before getting a human response. Without enhancing the Complaint with anything more than the language already available in the statute, Plaintiffs provide only a threadbare, "formulaic recitation of the elements" of a TCPA claim, which is not entitled to an assumption of truth. *Iqbal,* 556 U.S. at 678; *Twombly,* 550 U.S. at 555; *Brooks,* 578 F.3d at 581.

The Court agrees that it is unreasonable to require a TCPA plaintiff to elaborate on the specific technical details of a defendant's alleged ATDS, but it is not unreasonable to require a plaintiff to supplement the complaint with some additional factual detail suggesting that an ATDS was actually used. For example, a TCPA plaintiff could describe the robotic sound of the voice on the other line, the lack of human response when he attempted to have a conversation with the "person" calling him, the generic content of the message he received, or anything else about the circumstances of a call or message contributing to his belief it was prerecorded or delivered via an ATDS. Plaintiffs do not do so in the present case and may not rely on the discovery process to cure such deficiencies in the complaint. Therefore, the Court grants BSI's Motion to Dismiss Count II of the Complaint without prejudice.

**C. Count III: Violation of the Bankruptcy Automatic Stay**

BSI argues that Count III of the Complaint should be dismissed for failure to state a claim. Specifically, BSI contends that it did not violate the automatic stay because the bankruptcy court entered an order granting relief from the stay to BoA and its predecessors in interest. Plaintiffs counter that the bankruptcy court's relief order was in regards to the Property, and did not authorize BSI to pursue a claim against them personally.

An automatic stay issued upon Plaintiffs filing their Chapter 13 bankruptcy petition, and prohibited "any act to collect, assess, or recover a claim *against the debtor* that arose before the commencement of the case." 11 U.S.C. § 362(a)(6) (emphasis added). After Plaintiffs' modified plan was confirmed, the bankruptcy court modified the automatic stay "as to the interest of [BoA], its successors, and/or assigns in [*the Property*]." (emphasis added). Although this modification allowed for collection on the Property, it did not eliminate the stay as to any claims against the Plaintiffs personally. By sending Plaintiffs "multiple collection letters" and making "multiple collection calls" to Plaintiffs regarding the subject debt, (Compl. ¶ 67-68), BSI was attempting to collect "a claim against the debtor that arose before the commencement of the case." The existence of the relief order as to the Property does

not insulate BSI from liability for its actions against Plaintiffs – the debtors. This is apparent from the face of the Complaint. Therefore, the Court denies BSI's Motion to Dismiss Count III because the allegations in the Complaint state a plausible, legally cognizable claim for violation of the bankruptcy automatic stay.

### D. Count IV: Violation of the Illinois Consumer Fraud Deceptive Business Practices Act ("ICFA")

Recovery under the ICFA may be had for either unfair or deceptive conduct. *Robinson v. Toyota Motor Credit Corp.,* 775 N.E.2d 951, 960 (Ill. 2002). The elements of a claim under the ICFA are: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce." *Id.* Actual reliance is not an element of a valid ICFA claim, but the plaintiff must show that the consumer fraud proximately caused the injury. *Connick v. Suzuki Motor Co.,* 675 N.E.2d 584, 593 (Ill. 1996). "Furthermore, a complaint alleging a violation of [the ICFA] must be pled with the same particularity and specificity as that required under common law fraud." *Id.* Thus, a complaint must allege "facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the

misrepresentations and to whom they were made." *Id.* at 584. Conclusory allegations unsupported by specific facts are insufficient. *Time Savers, Inc. v. LaSalle Bank, N.A.*, 863 N.E.2d 1156, 1164 (Ill. App. Ct. 2007).

BSI contends that Plaintiffs' ICFA claim is deficient because Plaintiffs have failed to allege with sufficient particularity and specificity that BSI intended for Plaintiffs to rely on the deceptive practice or act. Plaintiffs' Complaint alleges that BSI "intended that the Plaintiffs rely on its unfair acts," (Compl. ¶ 80), but BSI argues that this is insufficient, and that other facts alleged — like the Disclaimer — suggest that BSI did not intend to induce Plaintiffs' reliance.

A motion to dismiss under Rule 12(b)(6) requires the Court to analyze the legal sufficiency of the complaint, *not* the factual merits of the case. *Autry v. Nw. Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). Plaintiffs' allege that: (1) BSI was deceptive when it attempted to collect a debt to which it had no legal claim; (2) BSI intended, through continued letters and phone calls, to induce Plaintiffs' reliance on the deception; and (3) this deception occurred during a course of conduct involving trade or commerce. The Complaint contains facts identifying what misrepresentations were made, when they were made, who made the misrepresentations, and to whom they

were made.  This is all that is required at the pleadings stage.  Therefore, the Court denies BSI's Motion to Dismiss Count IV.

## IV. CONCLUSION

For reasons stated above, Defendant's Amended Motion to Dismiss [ECF No. 23] is granted in part and denied in part.  The Court dismisses Count II of the Complaint without prejudice.  If Plaintiffs do not amend the Complaint within 14 days, this dismissal will convert into a dismissal with prejudice.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 12/15/2015